UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VAN DEN HEUVEL TRUST OF 1994 et al.

    Plaintiffs,

  v.                                                Case No. 15-CV-275

UNITED STATES ARMY CORPS OF ENGINEERS, et al.,

    Defendants.

## DECISION AND ORDER DENYING DEFENDANT UNITED STATES ARMY CORPS OF ENGINEERS' MOTION TO DISMISS

Plaintiffs filed this action to quiet title in Brown County Circuit Court against the Town of Lawrence, Wisconsin, the United States Army Corps of Engineers (CoE), and the Kaukauna Electric & Water Utility. CoE, a federal agency, removed the action to this court under 28 U.S.C. §§ 1441 and 1442(a)(1). The case is before the court on CoE's motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for failure to timely file suit. As explained below, the motion will be denied.

### BACKGROUND

Plaintiffs are the Van Den Heuvel Trust of 1994, Gerald and Lynette Van Den Heuvel as its Trustees, and Van Den Heuvel Mill, LLC. Plaintiffs collectively own three adjoining pieces of real property on the west bank of the Fox River in the Town of Lawrence. The gravamen of Plaintiff's complaint is that the Town of Lawrence has refused to prosecute members of the public for trespassing on Plaintiffs' property by traveling upon an easement Plaintiffs contend was created exclusively for the benefit of the CoE and Kaukauna Electric & Water Utility.

Long before Plaintiffs acquired the property at issue, in 1909, the War Department issued a license to the Green Bay and Mississippi Canal Company for the construction of a power canal. The license required the Canal Company to provide a non-descriptive roadway from the shore of the Fox River to the highway running alongside the river, now known as Lost Dauphin Road or County Highway D. Defendant Kaukauna Electric & Water Utility subsequently acquired the Canal Company's rights and obligations under the license. An easement satisfying the original War Department license is recorded in the deeds conveying the subsets of property at issue to Plaintiffs in 1978 and 1992. The former easement is described as a "public right of ingress and egress" and the latter is described as a "non exclusive easement." (ECF Nos. 1-1 at 16 & 18.)

Plaintiffs acknowledge that a 20-foot public right of ingress and egress "may have existed" over their property. (Comp. ¶ 10, ECF No. 1-1 at 5.) The easement is shown in Exhibit C to the complaint and is marked by the notation "Exist. Present Traveled Roadway." (*See* Plat of Survey, Compl. Ex. C, ECF No. 1-1 at 23.) However, Plaintiffs allege they reached an agreement with the Town of Lawrence under which they would improve a road known as Little Rapids Road and the Town would vacate the public easement.[1] The easement was vacated by resolution of the Town of Lawrence passed on September 13, 2010. (9/13/2010 Resolution, Compl. Ex. D, ECF No. 1-1 at 24.) In addition to vacating the easement, Plaintiffs allege the Town caused to be recorded a Certified Survey Map which created a town highway as well as a 20-foot right of ingress and egress exclusive to the CoE and the Kaukauna Electric & Water Utility. Plaintiffs claim the highway and new easement satisfy the access to the water

---

[1] Little Rapids Road appears to be a roadway running from Lost Dauphin Road to the river's edge. The easement also runs from Little Rapids Road to the river's edge, but it cuts through Plaintiffs' property.

required under the original War Department license.  (Compl. ¶ 12, ECF No. 1-1 at 6.)  The Certified Survey Map is attached to the complaint as Exhibit E.  (ECF No. 1-1 at 29.)

Despite the agreement they claim they reached with the Town, Plaintiffs allege the Town continues to allow members of the public to trespass on Plaintiffs' land by traveling over the easement.  Plaintiffs allege that the Town relies as grounds for their refusal to prosecute on the CoE's position, which as confirmed in a letter to Mr. Van Den Heuvel dated June 11, 2012, is that the public continues to have the right to ingress and egress over Plaintiff's property via a "recorded perpetual easement."  (Compl. ¶ 15; 6/11/2012 CoE Letter, Compl. Ex. G, ECF No. 1-1 at 41.)

**ANALYSIS**

As relevant here, Plaintiffs seek a declaration that the Town's resolution vacated any public easement and that the new easement the Town created granted a right of access to the CoE and utility company, but not the public.  (Plaintiffs also assert an intentional misrepresentation claim against the Town not at issue here.)  The request for declaratory relief is styled as an action to "quiet title," but the complaint does not cite any state or federal statutory cause of action.  What would historically be an action to quiet title under Wisconsin law now arises under Wis. Stat. § 840.03(1)(a), but an action to quiet title against the United States and its agencies, which are generally immune from suit, arises exclusively under the Quiet Title Act, 28 U.S.C. § 2409a.  *Block v. North Dakota ex rel. Bd. of University and School Lands*, 461 U.S. 273, 286 (1983).

CoE argues that the QTA does not apply.  Therefore, without any applicable waiver of sovereign immunity, CoE contends that this court has no subject matter jurisdiction of any claim against CoE.  Alternatively, CoE argues that Plaintiffs' claim against it is barred under the

3

QTA's 12-year statute of limitations, 28 U.S.C. § 2409a(g).

Specifically, with respect to subject matter jurisdiction, CoE argues the QTA was intended to settle disputes about who owns land, not disputes like this one about the scope of an easement. CoE notes a circuit split on this question and urges the court to follow the Sixth Circuit, which has held that the plain language of the QTA "clearly limits its scope to adjudications in which the title or ownership of real property is in doubt." *Saylor v. United States*, 315 F.3d 664, 670 (6th Cir. 2003). CoE also cites a district court case following *Saylor* and holding that "any challenge as to the scope of an easement is not a challenge to title but rather an attempt to reform the deed." *Sherwood v. Tennessee Valley Authority*, 925 F. Supp. 2d 906, 913–14 (E.D. Tenn. 2013).

The relevant language of the QTA provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. . . ." 28 U.S.C. § 2409a(a). In *Saylor*, the Sixth Circuit interpreted the language "a disputed title to real property" to be limited to title or ownership disputes, not disputes about the scope of an easement. 315 F.3d at 669–70. Although the Seventh Circuit has not interpreted this language, CoE acknowledges that several other courts have construed the QTA more broadly than the Sixth Circuit has. *See School Bd. of Avoyelles Parish v. United States Dep't of Interior*, 647 F.3d 570, 580 (5th Cir. 2011) ("[T]he legislative history of the QTA indicates that Congress intended easements to be included in the real property rights adjudicated in a quiet title action." (quotations omitted)); *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009) ("This court has repeatedly held that both disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA."); *United States*

*v. Bedford Associates*, 657 F.2d 1300, 1316 (2d Cir. 1981) ("[T]he language of the statute indicates that the phrase "adjudicate a disputed title" does not limit the waiver of sovereign immunity under s 2409a to traditional title disputes."); *Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir. 1978) ("[E]asements are real property interests subject to quiet title actions."); *see also* H.R. Rep. No. 92-1559, at 8 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4547, 4552 ("Perhaps [the] most common application of the proposed statute would be in boundary disputes between the United States and owners of adjacent property. The quieting of title where the plaintiff claims an estate less than a fee simple—an easement or the title to minerals—is likewise included in the terms of the proposed statute.").

I conclude that there need not be an ownership dispute over title to the entire property for the QTA to apply. Subsection (a) covers cases where there is a "disputed title to real property in which the United States claims *an* interest" and subsection (d) further provides that "[t]he complaint shall set forth with particularity the nature of the *right, title, or interest* which the plaintiff claims in the real property, the circumstances under which it was acquired, and *the right, title, or interest* claimed by the United States." As the Second Circuit reasoned, these broadly-worded provisions "confirm[] the impression that the interest asserted by the government need not be a 'title' or ownership interest." *Bedford Associates*, 657 F.2d at 1316.

Simply put, the requisite "disputed title to real property" in this case is Plaintiffs' claim that their ownership of the property is subject to an exclusive easement and the other parties' apparent claim that Plaintiffs' ownership is subject to a public easement. Although this may not be consistent with a traditional "quiet title" action, I agree with the courts that have interpreted the QTA's broad language as including more than just those cases. In other words, the QTA was written so that it includes actions to remove interests that "cloud title," such as the CoE's

5

claim that a public easement is in force. *See, e.g.*, *Robinson*, 586 F.3d at 687 ("On the one hand, the statute is entitled the 'Quiet Title Act,' see 28 U.S.C. § 2409a, which would indicate that the act only applies to traditional 'quiet title' actions. The legislative history, however, indicates that Congress did not intend to limit the waiver solely to the traditional 'quiet title' cause of action; instead Congress was more generally concerned with interests that 'cloud title,' i.e., interests that raise questions that may affect the claim of title and pose problems in the future.").

In reply, although CoE maintains that it stands on its initial brief, the agency also seems to make a new argument. CoE states: "As to whether easements are within the scope of the QTA, it is the government's position that the plaintiffs' complaint fails to allege that the [CoE] at any time 'claimed' an interest in plaintiffs' property pursuant to the 2010 easement instrument. *See* 28 U.S.C. § 2409a(a). Therefore, with no claimed interest by the government to plaintiffs' property via the Town resolution, the Court lacks subject matter jurisdiction to adjudicate the easement's scope." (ECF No. 22 at 1.) Thus, while CoE's initial argument advanced a certain interpretation of the requirement that the action be one "to adjudicate a disputed title to real property," CoE's argument now focuses on the requirement that the property be one "in which the United States claims an interest." This is a new argument to which Plaintiffs did not have an opportunity to respond. In any event, the argument is not persuasive because subsection (a) simply requires that the United States claim an interest in *the property*, which it does here. It does not matter that CoE claims an interest in the property via the old easement but not the new one. Because Plaintiffs have a alleged a dispute regarding the title to their property and the property is one in which the United States claims an interest, I conclude that the court has subject matter jurisdiction to decide this case.

6

CoE argues alternatively that the claim against it is time-barred. Subsection (g) of the QTA provides a 12-year statute of limitations: "Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." The Seventh Circuit has noted that "[t]his language could be read to say that the claim accrues as soon as a person knows that the United States claims title or any other interest in the real property." *Wisconsin Valley Imp. Co. v. United States*, 569 F.3d 331, 334 (7th Cir. 2009). But the court also noted that the statute "has not been understood in this way." *Id.* Rather, courts have said that "the claim accrues when a person knows, or in the exercise of reasonable diligence should have known, that the United States maintains a claim *adverse* to the plaintiff's." *Id.* (emphasis in original). In *Wisconsin Valley*, the United States did not argue for the former reading and the Seventh Circuit therefore did not have occasion to adopt one of the conflicting interpretations. *Id.* at 335.

In any event, CoE contends Plaintiffs' claim is time-barred under either reading. If the claim accrues when a person knows the United States claims any interest in the property, CoE argues Plaintiffs knew about the CoE's interest in the easement when they purchased the first piece of property in 1978. If the claim accrues when a person knows or in the exercise of reasonable diligence should have known that the United States maintains a claim *adverse* to Plaintiffs', CoE argues the claim is still time-barred. This is because the alleged trespassing and the CoE's position that the easement was public have been known to Plaintiffs since the 1990s.

Plaintiffs argue that the latter interpretation of the statute is correct but contend that the "trigger date" for commencing the limitations period under subsection (g) is the Town

7

resolution of September 13, 2010. It is at that time that the Town vacated the old easement and allegedly created a new one, and it was only at that time that CoE's claim that the public maintained the right to access the property conflicted with Plaintiffs' claim that the easement was granted exclusively to the utility company and CoE.

I agree with Plaintiffs that the latter interpretation of subsection (g) makes more sense. If the limitations period began to run even before knowledge of any *adverse* interest, there would be a perverse incentive for property owners to file preemptive actions even when there is no reason to believe there is any dispute at all. This would not be consistent with subsection (a), which as noted above, requires a dispute about title. More importantly, I do not think the claim here accrued in the 1990s no matter how subsection (g) is interpreted. Plaintiffs acknowledge a public easement may have existed at that time, but their claim arises out of their property rights which were purportedly altered by the Town's 2010 resolution. Therefore, whether the trigger date is the passing of the resolution or perhaps even Plaintiffs' knowledge that the CoE would not recognize the new easement (i.e. knowledge of an *adverse* interest), this action was commenced within the 12-year limitations period.

## CONCLUSION

For all of these reasons, CoE's motion to dismiss is **DENIED**. The Clerk is directed to put this case on the court's calendar for further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this   8th    day of July, 2015.

                                  s/ William C. Griesbach
                                  WILLIAM C. GRIESBACH, Chief Judge
                                  United States District Court